IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
EASTERN DIVISION

| | |
|---|---|
| DL Farms LLC, | ) |
| | ) |
| Plaintiff, | ) **ORDER ON MOTIONS FOR** |
| | ) **SUMMARY JUDGMENT** |
| vs. | ) |
| | ) Case No. 3:21-cv-144 |
| United States Department of Agriculture, | ) |
| et al., | ) |
| | ) |
| Defendants. | ) |

Plaintiff DL Farms LLC ("DL Farms") moves for summary judgment (Doc. 37), and Defendants United States Department of Agriculture ("USDA"), Federal Crop Insurance Corporation ("FCIC"), and Risk Management Agency ("RMA") cross move for summary judgment. Doc. 39. The United States opposes DL Farms' motion, and DL Farms opposes the United States' motion. Docs. 39, 42. For the reasons below, DL Farms' motion is denied, and the United States' motion is granted.

**I.   FACTS**

This case seeks judicial review of the Defendants' administrative decision that DL Farms did not follow good farming practices ("GFP") as to its 2019 potato crop. DL Farms is a North Dakota limited liability company that farms in North Dakota. Because it farms, DL Farms purchases crop insurance. Crop insurance policies are typically sold and serviced by private, approved insurance providers ("AIPs").  In turn, AIPs enter into reinsurance agreements with the FCIC. The FCIC is an agency of the USDA, and the RMA performs certain duties on FCIC's behalf. 7 C.F.R. Part 400 contains the applicable regulations that delineate the various agencies' roles as to crop insurance.

As relevant here, there are two general types of crop insurance policies: yield based and revenue based. Yield based policies insure against yield losses that occur because of natural causes like drought, excessive moisture, hail, wind, frost/freeze, insects, and disease. For the 2019 season, DL Farms purchased a yield based multi-peril crop insurance policy for its potato crop in Traill County, North Dakota through NAU Country Insurance ("NAU"). Doc. 1. NAU is the AIP. Section 12 of the policy states that "failure to follow recognized good farming practices for the insured crop . . . [is] NOT covered." Doc. 11-12 at 100. This mirrors the statutory language defining the scope of crop insurance agreements. See 7 U.S.C.A. § 1508(a)(3)(A)(iii).

On February 5, 2019, representatives of NAU met with DL Farms and discussed the importance of soil testing. Doc. 11-13 at 62-63. Several days later, NAU followed up by letter and requested that DL Farms put in place a soil fertility plan (based on soil testing) that would help determine the appropriate fertilizer application for the crop. Id. at 64. NAU also requested DL Farms consult with an agricultural expert following the soil test. Id. NAU further highlighted the policy provisions required that DL Farms follow GFP. Id. DL Farms did not follow these recommendations prior to planting its 2019 potato crop. Doc. 11-2 at 1-3.

It is undisputed that DL Farms' 2019 potato crop suffered a loss. Given the loss, DL Farms filed timely notices of loss with NAU, asserting that excess precipitation and cold weather damaged the crop. Doc. 11-10 at 1-3. On March 2, 2020, NAU wrote a letter to DL Farms, reminding it that NAU had requested a soil fertility plan be put in place and that the plan include regular soil tests and some consultation with an agricultural expert to determine proper fertilizer application. Doc. 11-2 at 1-3. The March 2020 letter went on to analyze DL Farms' GFP, its failure to institute a fertilization plan, and how it intended to finalize the claim, given DL Farm's failure

to show GFP. Id. at 2-3. Seeing NAU's reliance on its GFP (or lack thereof), DL Farms then requested a GFP determination from the Regional Office of the RMA. Doc. 11-10 at 14.

On April 15, 2020, the RMA's Billings Regional Office received the request from DL Farms for a GFP determination. Id. That Office reviewed the decision and documentation provided by NAU, along with documentation provided by DL Farms. Doc. 11-10 at 14-18. One of the documents was a soil test performed by DL Farms after receipt of the March 2020 letter. Doc. 11-11 at 78. On September 10, 2020, the Regional Office issued its GFP determination, finding that DL Farms failed to follow GFP by not applying timely and adequate amounts of phosphorus and potassium to its potato crop. Id. at 74-81.

On October 6, 2020, DL Farms requested reconsideration. Doc. 11-13 at 1-10. On March 29, 2021, the Deputy Administer for Insurance Services upheld the Regional Office's GFP determination (the "Reconsideration Determination"). Doc. 36 at 132-52. The basis of this decision was the same—DL Farms failed to follow GFP by not applying timely and adequate amounts of phosphorus and potassium to its potato crop. Id. at 137. On July 6, 2021, DL Farms filed its complaint seeking judicial review of the Reconsideration Determination. Doc. 1.

## II.   LAW AND ANALYSIS

Both parties move for summary judgment. DL Farms generally argues the Reconsideration Determination (and its GFP determination) was arbitrary and capricious and that its losses were a result of poor weather—not its farming practices. The United States argues that DL Farms' focus on weather is misplaced and that the Reconsideration Determination was not arbitrary and capricious.

### A.     Legal Standards

This is an action for judicial review under the Administrative Procedures Act (the "APA"). The APA applies to judicial review of determinations made by an administrative agency. 5 U.S.C. § 701 et seq. "A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof." 5 U.S.C. § 702.

In the context of the agency and administrative decision at issue here, a GFP determination "may not be reversed or modified as the result of judicial review unless the determination is found to be arbitrary or capricious." 7 U.S.C. § 1508(a)(3)(B)(iii)(II). A decision is arbitrary and capricious if:

> the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.

Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43 (1983). The scope of review is narrow, and a reviewing court cannot substitute its judgment for that of the agency. Id. The administrative record establishes the facts in an action seeking judicial review of agency action. Camp v. Pitts, 411 U.S. 138, 142 (1973). So, summary judgment is appropriate for resolving claims challenging agency action. See e.g., Voyageurs Nat. Park Ass'n v. Norton, 381 F.3d 759, 766 (8th Cir. 2004); South Dakota v. U.S. Dep't of Interior, 423 F.3d 790, 794 (8th Cir. 2005).

The issue this case presents is whether the Reconsideration Determination, and its GFP determination as to DL Farms for the 2019 potato crop, was arbitrary and capricious. GFP is a term of art, defined in the regulations as:

4

> The production methods utilized to produce the insured crop and allow it to make normal progress toward maturity and produce at least the yield used to determine the production guarantee or amount of insurance, including any adjustments for late planted acreage, which are those generally recognized by agricultural experts or organic agricultural experts, depending on the practice, for the area.

7 C.F.R. § 457.8. The GFP Determination Standards Handbook ("GFP Handbook") articulates the standards and procedures that are used to make a GFP determination. Doc. 11-12 at 123-193.

### B.      RMA's Reconsideration Determination and GFP Decision

DL Farms argues the RMA's GFP decision (as decided in the Reconsideration Determination) was arbitrary and capricious because the RMA did not follow the applicable regulations or the GFP Handbook, and the decision is contrary to the overwhelming weight of the evidence. For its part, the United States argues that DL Farms' argument as to weather is misplaced and that the GFP decision was not arbitrary and capricious.

#### 1.      Weather Related Issues

First, DL Farms argues that poor weather was the cause of its subpar 2019 potato crop, not its farming practices. The United States counters that weather cannot be considered as part of a GFP determination, and even if it could, the RMA did consider weather in reaching its decision.

DL Farms bears the burden of showing that its practices conformed to the requirements of GFP.[1] Importantly, GFP is a separate determination from what was the cause of loss under the insurance policy. See 7 U.S.C. § 1508(a)(3)(A)(iii) (2012).[2] Whether wet conditions caused the loss is not at issue because DL Farms can only challenge the determination that it did not follow

---

[1] According to the GFP Handbook, "Policyholders are responsible for establishing that the farming practice in question was a good farming practice." Doc. 11-12 at 138.

2 To the extent DL Farms disagreed with the claim reduction, amount of reduction, or correlation between its fertilization practices and the 2019 potato crop loss, its exclusive remedy was mediation and arbitration. Doc. 11-2 at 3 and Doc. 11-12 at 114; see also 7 C.F.R.§ 457.8 ¶ 20(d).

5

GFP. That said, weather-related facts are not irrelevant either, as the United States suggests. Doc. 40 at 15. All GFP determinations "must consider items in 22A" of the GFP Handbook. Doc. 11-12 at 138. Paragraph 22A identifies the "Bases for GFP Decisions" and states that determinations must be based on the agronomic situation of the policyholder, including:

    a.    Material facts about production methods that were used or will be used to produce the crop;
    b.    <u>Weather and climate factors</u>;
    c.    Pest or disease risks; and
    d.    Other factors affecting the crop.

Id. (emphasis added). So, weather is one of the factors for making a GFP decision, and it can be considered to the extent it affected DL Farms' compliance with the requirements of GFP.

Here, the record reflects that the RMA did consider weather—to the extent it affected DL Farms' ability to demonstrate GFP. Doc. 36 at 135-36. In the Reconsideration Determination, the RMA cited the weather conditions in Traill County during the relevant dates for planting and for applying fertilizer. Id. The RMA discussed the rainfall measures and noted that the recorded precipitation was not extreme enough to affect fertilizer application. Id. DL Farms presents no evidence to rebut this conclusion.[3] As a result, the RMA's analysis of the weather, as it affected DL Farms' ability to comply with GFP, was not arbitrary and capricious and substantial evidence supports the RMA's analysis of the weather's effects on DL Farm's compliance with GFP.

    **2.**    **Expert Opinions**

Next, paragraph 22 of the GFP Handbook also requires that an opinion from at least one agricultural expert be used in making a GFP determination. Doc. 11-12 at 138-39. DL Farms

---

[3] DL Farms provided evidence of poor weather but has not provided any evidence that weather affected or prevented application of the recommended amount of fertilizer to its potato crop.

argues that the United States did not comply with this requirement. But the record indicates otherwise.

In reaching its conclusion that DL Farms' 2019 fertilizer application was deficient, the RMA compared the DL Farms' fertilization practice to the recommendations in the North Dakota State University ("NDSU") Extension Office publication, Fertilizing Potato in North Dakota, which provides recommended fertilization rates for all yield goals. Doc. 36 at 134-35. Per the GFP Handbook, published material from an agricultural expert meets the criteria for an expert opinion. Doc. 11-12 at 139. Dr. David Franzen, an NDSU Extension Soil Specialist, was one of the authors of the NDSU publication and is cited by DL Farms as an expert throughout its briefing. Doc. 38 at 5-6, 12, 19. Based on a six-sample soil test taken after the 2019 growing season,[4] the NDSU publication indicated DL Farms' application was deficient in phosphorous and potassium. Id.

DL Farms encourages the Court to disregard the numbers from the NDSU publication, reexamine the strength of certain evidence, and place more weight on the opinions of its preferred experts. But the Court cannot substitute its judgment for that of the RMA. Given that the soil samples are deficient in phosphorous and potassium according to the NDSU publication, there is a rational basis for the RMA's Reconsideration Determination. And to the extent this was a factual determination by the agency, the NDSU publication is expert evidence that is adequate to support the RMA's decision.

---

[4] While the soil test was taken following the 2019 growing season, expert testimony suggested it was a reliable indicator of the soil prior to 2019. Doc. 1-1 at 12-18. In any event, the lack of a soil test prior to the 2019 growing season was because DL Farms did not comply with NAU's specific request for a soil test prior to planting.

7

### 3. Requirement to Fertilize

Finally, DL Farms argues that because there is no specific requirement to soil test, its failure to do so cannot be considered noncompliance with GFP requirements. The regulations, however, do contemplate that an insured may be required to comply with a "directive, or letter . . . that requires a particular participant or group of participants to take a specific action." 7 C.F.R. § 400.452. NAU's request that DL Farms perform a soil test is within the range of requirements an AIP may impose.

DL Farms further argues that because the regulations do not specify the precise requirements for fertilizing potatoes, its failure to apply the recommended amount of fertilizer cannot be considered a failure to demonstrate GFP. But this argument is misguided. The regulations apply to over 70 types of crops that are insured by FCIC. 7 C.F.R.§ 457.1. Listing the fertilization requirements for each of these crops in every county would be incredibly burdensome. Further, as indicated above, it is often necessary to sample the soil prior to determining the appropriate levels of nutrients needed in the fertilizer. Dr. Franzen published material (reviewed by the RMA) that noted "[f]ertilizer needs should be determined after evaluating the current fertility level of the soil through soil testing, preferably using a site-specific zone sampling approach, as well as the nutrient needs of the crop to be grown[.]" Doc. 11-11 at 114. On this record, the requirement of DL Farms to fertilize its potato crop with a certain level of nutrients is not arbitrary and capricious.

In short, DL Farms could not have known what fertilization practices were necessary to establish GFP prior to the 2019 planting season because it (against NAU's directive) did not perform soil testing and consult with an agricultural expert. A soil test was then taken after the 2019 planting season, which according to an expert publication, indicated that DL Farms'

fertilization practices had been deficient. As a result, the RMA determined in its Reconsideration Determination that DL Farms did not follow GFP as to its 2019 potato crop. Again, the operative question is whether the agency considered the relevant factors and if there is a rational basis for the agency's decision. Citizens to Pres. Overton Park, Inc. v. Volpe, 401 U.S. 402, 415-16 (1971). And here, there is. The RMA's Reconsideration Determination analyzed the relevant factors and came to a rational decision, given DL Farms' failure to conduct a soil test prior to the 2019 planting season and the evidence showing the fertilization practice was deficient in both in phosphorous and potassium. On this record, the Reconsideration Determination was not arbitrary and capricious and is not contrary to the substantial weight of the evidence.

## III.   CONCLUSION

The Court has reviewed the entire record, the parties' filings, and the relevant legal authority. For the reasons above, the United States' motion for summary judgment (Doc. No. 39) is **GRANTED**, and DL Farms' motion for summary judgment (Doc. No. 37) is **DENIED**.

**IT IS SO ORDERED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated this 5th day of September, 2023.

*/s/ Peter D. Welte*
Peter D. Welte, Chief Judge
United States District Court